IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAJENI DYER, | CIVIL DIVISION |
| Plaintiff, | Case No. 2:23-cv-345 |
| v. | |
| COMPASS GROUP, NORTH AMERICA, | |
| Defendant. | |

## COMPLAINT AND JURY DEMAND

A.   *Preliminary Statement*

1. The plaintiff Rajeni Dyer brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* to redress violations of her right to be free from employment discrimination based upon her race. Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* A jury trial is demanded.

B.   *Jurisdiction*

2. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e *et seq.*, 28 U.S.C. § 1331 and under the doctrine of pendant jurisdiction.

3. On or about July 13, the plaintiff filed a timely charge alleging discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed at 533-2022-01553. This charge was simultaneously cross-filed with the Pennsylvania Human Relations Commission.

4. The EEOC issued a Notice of Right to Sue dated January 18, 2023.

5. This Complaint is filed within 90 days of receipt by the plaintiff of the Notice of Right to Sue.

C.   **_The parties_**

6.   The plaintiff is an adult individual who resides in Braddock, PA (Allegheny County).

7.   The defendant Compass Group, North America ("Compass" or "the company") is an entity doing business in the Commonwealth of Pennsylvania. At all times material, the defendant has a place of business located at within this district, and, more specifically, in Allegheny County

8.   Compass is a contract foodservice company serving meals in locations including offices, factories, schools, universities, hospitals, and major sports and cultural venues.

9.   At all times material, the defendant employed more than fifteen employees.

10.   The defendant was the plaintiff's employer and is an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(b).

D.   **_Factual Background_**

1.   The plaintiff was employed by Compass from March 2019 through April 6, 2022.

2.   When she started working for Compass, the plaintiff was employed at the Litchfield Towers in Oakland as a roundman. She was later assigned to work at the Chick-fil-A at the Peterson Event Center. By all accounts, the plaintiff's performance while she worked for Compass was excellent. The plaintiff performed all the functions of her job in a competent fashion and considered by management to be an excellent employee. She was never written up or disciplined. Further, her attendance was very good.

3.   On or about February 4, 2022, she started working at the Forbes Street Market in Oakland, PA.

4.	The plaintiff's position was Cashier/Receiver.  Her responsibilities included running registers, unloading products from delivery trucks on the dock, shelving, preparing pre-made meals and displaying food products.

5.	While she was an employee at the Forbes Street Market, the plaintiff (African-American) was treated differently than similarly situated white employees and her termination was a result of discriminatory animus.

6.	Susan Krznaric (Caucasian), Supervisor, talked down to the plaintiff as if she were a child.  She did not treat similarly situated white employees in this fashion.

7.	Krznaric made comments about the clothes the plaintiff wore to work, often telling her that certain articles of clothing she wore were not allowed at work.  Similarly situated white employees often wore the same (and sometimes identical) clothing but were not singled out.

8.	On March 31, 2022, the plaintiff had her hair braided straight back in cornrows.

9.	Cornrows are a traditional style of braids in which the hair is braided very close to the scalp, typically using an underhand, upward motion to make a continuous, raised row.  Cornrows are often favored for their easy maintenance; cornrows can be left in for weeks at a time if maintained through careful washing of the hair and natural oiling of the scalp.  Braids are considered a protective styling for African curly hair as they allow for easy and restorative growth.  It is important not to put extra tension on cornrows (by, for example, pulling on the hair to "tie it up") because the stress to the hair follicles in doing so can cause a type of hair loss known as traction alopecia.

10. Compass has a written policy for "all associates" that their "hair must be neat and clean" and for all associates working in food service accounts that "hair nets or hats should be worn as appropriate."

11. On Friday, April 1, 2022, the plaintiff reported to work for her ten-hour shift that day. She had her cornrows covered with a black covering and wore a "Forbes Street Market" cap on her head.

12. Beth Melchior, Manager, saw the plaintiff's hair style and said, "Rajeni, can you pull up your hair?" She said it an off-hand way; the plaintiff did not take it as a direct order, so she did not respond. Melchior did not repeat the request that day, so she believed that Melchoir had just let the issue drop.

13. The next day, April 2, 2022, the plaintiff reported to work for her shift. Again, she had her cornrows covered with a black covering and the "Forbes Street Market" cap on her head.

14. Shortly after starting her shift, Krznaric approached the plaintiff and told the plaintiff to tie up her hair. The plaintiff responded, "I have a hat on my head already."

15. Krznaric was visibly upset. She turned her back to the plaintiff, sighed loudly and walked away.

16. Soon thereafter, Crystal Goller (Caucasian), a co-worker, approached her and said, "Susan [Krznaric] told me to tell you to go fill up the display with the Pepsi."

17. The plaintiff noted to herself that Krznaric was so mad that she did not assign this task to her herself; she had a co-worker do it. Hoping that Krznaric would "cool down" soon, the plaintiff went back to the cooler, retrieved Pepsi products and started putting them in the display.

18. Krznaric was at the register, ringing up customers' purchases. She saw the plaintiff and yelled loudly, "What are you doing? Didn't I tell you to put your hair up?" Everyone in the store could hear her yelling.

19. Trying to de-escalate the situation, the plaintiff did not respond; instead, she looked directly at Krznaric and calmly walked back to the storage facility to get more beverages from the cooler.

20. Within minutes, Krznaric confronted the plaintiff, getting right in the plaintiff's face. Krznaric was furious. She had her cell phone in her hand with the speaker on. Melchior was on the phone, yelling at the plaintiff: "ARE YOU GOING TO TIE YOUR HAIR UP? DO I NEED TO COME DOWN THERE?"

21. Between Krznaric's physically intimidating stance right in front of the plaintiff and Melchior's screaming on the phone, the plaintiff was utterly dumb founded and in shock. All she could manage to say was, "But, my hat's on."

22. Melchior screamed, "OH NO, NOT TODAY. JUST GO HOME!" Krznaric followed this up with, "Leave the building right now!"

23. The plaintiff did not try to fight with Krznaric or Melchior; she calmly gathered her belongings, clocked out and left the building.

24. The next day, April 3, 2022, the plaintiff got a call from Melchior, who told her that she was being put on a five-day suspension as a result of what happened. Again, the plaintiff did not want to argue with Melchior, so she simply confirmed that she was being put on suspension.

25. On April 6, 2022, Melchior and Laura Defenzio, Human Resources, called the plaintiff and told her that her employment had been terminated. She later received a termination

notice stating that the reason for termination was that hair was in violation of the above-stated policy and that she was insubordinate for refusing to tie her hair up.

26. The reason given for the plaintiff's termination was nothing more than a pretext and the real reason that she was fired because of her race.

27. Further, it is discriminatory to enforce grooming or appearance policies that ban, limit, or restrict hairstyles including cornrows, even if said policies appear to be facially neutral, where said policies disparately impact African American employees, such as the plaintiff in this case.

## FIRST CAUSE OF ACTION

28. The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

29. The plaintiff is African American and thus is protected against discrimination on the basis of her race pursuant to Title VII.

30. The plaintiff was qualified for her position.

31. Despite her qualifications, the plaintiff was terminated. The reasons given for her discharge were a pretext.

32. The defendant's discharge of the plaintiff was because of her race in violation of Title VII.

33. The defendant's violation of Title VII was committed with intentional or reckless disregard for the plaintiff's federally protected right to work in an environment free of race discrimination.

## SECOND CAUSE OF ACTION

34. The preceding paragraphs are incorporated herein by reference as if they were fully set forth herein.

35. As a direct and proximate cause of its actions, detailed above, the defendant has violated the plaintiff's right to be free from discrimination under the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 *et seq.*

WHEREFORE, the plaintiff respectfully requests judgment be entered in her favor and against the defendant and that the defendant be required to provide all appropriate remedies under Title VII and the PHRA, including attorney's fees and costs.

Respectfully submitted,

*/s/ Michael J. Bruzzese*
Michael J. Bruzzese
Pa. I.D. No. 63306
220 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
(412) 281-8676
Counsel for the plaintiff

Dated: March 2, 2023